We'll hear argument this morning in Case 16-327, Lee v. United States. Mr. Bursch. Thank you, Mr. Chief Justice, and may it please the Court. J. Lee accepted a plea based on his counsel's assurance he would not be deported. Counsel had it exactly backward. The plea resulted in mandatory banishment from the United States. No one seriously doubts that if Mr. Lee knew the truth about his plea, he would have rejected it. But the Sixth Circuit dispensed with this Court's totality of the circumstances test for proving prejudice and created a categorical rule. In State courts, do State – are State courts mandated to follow what we do in the Federal courts under Rule 11, that is to say, before the guilty plea is accepted to advise the defendant of all of his rights? I'm sure they are. I think in most State courts they do follow that procedure. Do they also tell, advise the defendant that if he or she is an alien, there may be certain consequences to the plea in State courts? Do you happen to know? In State courts, every court would have their own version of Rule 11, and so they're going to have some colloquy. And I believe those colloquies have changed somewhat since Padilla. And so one of the problems here, if you look at what happened during the withdrawal of the plea, everyone in the Court, including the judge, thought that Mr. Lee was going to remain in the United States after he served his sentence. Kennedy, I don't quite see that in the case. Let me walk you through that. At 103 of the Joint Appendix, which is the beginning, the judge, after advising him of many of his rights, said, are you a U.S. citizen? No, Your Honor. Okay. A conviction on this charge then could result in your being deported. Does that at all affect your decision about whether you want to plead guilty or not? Yes, Your Honor. Okay. How does it affect your decision? I don't understand, and then he talks about it again. Right. And then we find out later, at the 2255 evidentiary hearing, Justice Kennedy, that when he said, I don't understand, he then turned to his attorney, Mr. Fitzgerald, and Mr. Fitzgerald said, don't worry, this is a standard warning that everybody gets. If the deportation consequences are not in the plea agreement itself, he will not be deported. I'm not sure how much more the judge can do, and that at least argues for our accepting a midway ground of requiring Strickland conspiracy, Strickland doubt, reasonable probability of success, if you go to a jury. Well, two points on that, Justice Kennedy. First, with respect to what he heard from the judges, what I would really like the Court to focus on is the sentencing hearing colloquy, which is at pages 124 to 127 of the joint appendix. And there it's clear that everyone, even the Federal district court judge, believed that he was going to be released back into the United States after his one year was over. She even put him on three years of supervised release and told him to give the probation officer his address once he was released. But on the other hand, that goes to deficient performance. I think we're beyond that, and the question is prejudice. Well, the question there at the colloquy was whether he was informed at all and how that prejudice, to kind of combine the response to yours and Justice Kennedy's question, what's the standard that we have here? And we start with the baseline, which is Strickland. Is there a reasonable probability of a different outcome? But that was refined by this Court in Hill. And as we explain at length in the reply brief, the Hill test is whether there is a reasonable probability the defendant would not have pleaded guilty. And here, is that the case? Roberts, you say the facts here support that conclusion and go through them all. But I don't understand how you'll be able to distinguish any case in the future. You say, well, here, he's been here a long time. He hasn't gone back to South Korea. Has he struck out? But I think someone who's just arrived might say, you know, this has been my passion my whole life, to come to the United States. I don't want to go back. You know, I'm not sure how at the outset a judge can simply say, oh, we don't need to have a hearing in a case like this. It seems to me that there would necessarily have to be a hearing in every case. Well, there would at least have to be a 20-255 hearing to get those facts on the table. But, Mr. Chief Justice, what I want to emphasize is that this is an objective test, not a subjective test. And so it's not enough for a defendant simply to say, well, had I known, I would have rejected my plea. Roberts, it sounds like a subjective test. I mean, I don't know if it's hypothetically or we can assume it's actually. The idea is that even though the result of a trial is going to be exactly the same, there's no reasonable probability that he won't be deported. He nonetheless wants to go through the trial. Now, that could be certainly characterized as a subjective wish, not objective. An objective person would say, well, it's going to come out the same anyway. Well, first let's talk about an example where you can see where the outcome would be different based on objective, and then let's go back to the facts of this case and show why it's objectively rational here. Consider a case where a defendant is new to the country. He has no familial or business ties to the United States. They're all to his country of origin. And the sentencing disparity between the plea that was offered and what could happen to him if he went to trial is enormous, say it's 50 years. It would not be rational for that person to choose to go to trial because they don't have the connections. But what we're talking about here Is rationality have to do with this, Mr. Birch? Well, we often get people who come in and say, I wasn't told about a plea and I would have pled guilty, and judges then look at the facts and find out that the defendant was claiming he was innocent, despite overwhelming evidence that he or she was guilty. Yes. Rock solid evidence. I mean, not only is there a video, there's witnesses, there's fingerprints, you name it, there's there, and defendants will come in and say, I'm not guilty. And we say, you know, he's foolish. He's irrational. No rational human being would not take this plea, the difference between 50 years and five years. And yet we deny their motion to undo their plea because we basically say it's subjective. This foolish defendant wanted to go to trial. I'm not quite sure what objectivity has to do with making a judgment whether this particular person, under their particular circumstances, would have or would not have gone to trial. Now, the factors you point to can support that subjective wish. If the difference between going to jail or not is only nine months, I might say, hmm, 100% chance I'm going to be deported. And the only benefit I get is nine months in my plea, which is what happened here. Yes. And there's even a 1% chance that I might be found not guilty. Or at least found guilty of possession and not something else. I think I'm going to roll the dice. Exactly, and that's why here- It's not irrational. It's neither irrational and it's reasonably probable that that's the decision he would have made if properly informed. As far as- I don't think that's, Mr. Bursch, I don't think that's a manageable standard. I see a number of possible standards that could be used here. One is purely subjective. What would this defendant have done? I understand the concept. It creates a lot of practical difficulties. Another objective standard would be is there a reasonable probability of a better outcome if the defendant had gone to trial. That's manageable. That's standard strictly. But if the test is, would a rational defendant have gone to trial given the sentence that would be fa- that the defendant might face if convicted, discounted by the probability of conviction versus the consequences of deportation? I don't know how to do that. It's because it depends on how a particular person values those two things. Well, is it irrational to try to climb Mount Everest without oxygen? I mean, is it irrational to swim with sharks or perform on a tightrope without a net? I mean, I wouldn't do those things, but people do it. I can't say they're irrational. They're much less risk-averse, and they value things differently. I think it's an unmanageable standard. Well, I think that the rationality standard, which you articulated in Padilla but not Hill, is supposed to be a low standard. It's a backstop to prevent the person from making the crazy decision like Justice Sotomayor was suggesting, where if the consequences of going to trial were the death penalty and they had a plea on the table where they could serve 12 months and then be out, you know, true irrationality. In most cases, like this one, you're going to be dealing with a defendant who acts rational, and it's simply a backstop. And when you're talking about giving up any chance to stay in this country versus a 9- to 11-month diminution in the sentencing guidelines range, I think that's not only rational for Mr. Lee or for you and me, but for almost anyone. Well, you have very sympathetic facts, but suppose we change the variables a bit. You know, they both can — they both are a sliding scale. Yes. So you have a much more serious — the potential for a much more serious sentence. Let's say if the person is convicted, the person will serve 8 years. And you have a person who has many more ties to the country to which the person would be removed. Now, how do you make that — how do you decide whether that's rational? At what point does it become irrational? Well, I think the starting point is the Hill test. Is there a reasonable probability the defendant, given all the objective circumstances, would have pleaded guilty? And once you've satisfied that, then you say, well, was this a rational thing to do? And the court shouldn't guess in close cases. Again, it's a backstop to prevent the life sentence versus 12-month sentence defendant from doing something irrational. In a case like this one, it's easy. But courts have to do this balancing all the time. And the genius of Strickland was that we didn't take any of those factors and say we're not going to consider those, which is what the Sixth Circuit did. We said you're going to look at all the circumstances. And so in your hypothetical, the length of the sentence matters and the consequences matter. Now, I want to take your hypo. It's unlike Strickland in this sense. In Strickland, so it's a trial error. And the court can determine whether it's harmless. Yes. But here, the plea is a different thing. The plea, there is no trial error. And the defendant says, if I were properly informed, I would exercise my constitutional right to a jury trial. And the Constitution doesn't say I have to be rational in making that choice. I have a right to a jury trial. Yeah, we agree with that. Because what Hill made clear is that the trial process and the plea process are two different things. And I'll quote from Hill. This is 474 U.S. at 59. Whether ineffective performance affected the outcome of the plea process. Misadvice, as you're indicating, Justice Ginsburg, causes a defendant to forsake their constitutional right to choose a trial. So it's a prejudice to the decision, Justice Alito, whether to invoke their right to trial in the first instance. But that points to a purely subjective test, which, as I said, is conceptually coherent, but creates a lot of practical difficulties, because then the court is going to have to try to recreate what the defendant would have done. And of course, after the defendant has been in prison for a while and is facing deportation, the person, I mean, may have second thoughts. It's very hard to recreate that. Well, it's not so hard, because under the Federal statute for filing a 2255 petition, you've got to do it within a year. You know, what happened here is Mr. Lee found out essentially the day that he was assigned to a facility that it was a detention facility, not a facility. But is that what you're asking us to do, to adopt a purely subjective standard? No, absolutely not. What is your standard? Our standard is the same objective standard you articulated in Hill, and that is whether there was a reasonable probability the defendant would not have pleaded guilty. All right. So wait. Even if it's irrational? Well, we're willing to live with the Padilla language that the decision can't be completely irrational. The same question differently, but it's meant to be the same question. What is the precise mistake of law that you think that the Sixth Circuit, that Judge Batchelder made? Yes. Why? Judge Batchelder in the Sixth Circuit made the mistake of having a categorical test where instead of considering all the circumstances objectively, she looked only at the likelihood of success at trial, to the exclusion of everything else. Well, I'm not sure she did that. I thought that she said my reading of it was she tried to follow what we've said. And in particular, in particular, she said, look, this person would have been faced with a choice. So you started with your example. In your example, it would have been nuts to reject the plea bargain. The guy would have ended up in the same place, deported, and he would have been in jail for a lot more time. She says here, it's the same. He would have ended up being deported anyway. The lawyer would have had to tell him your chance of winning this trial is zero, near zero, close to zero. And you will have served an extra, at least an extra 9 to 11 months, because you'll be in jail for 9 to 11 months more. And the same thing will happen to you anyway. Who would want that? It might be more than 9 to 11 months because the chances of departure are smaller. Okay. So now, I can repeat, and you started in answering the Chief Justice, what's different about this case? And I'd say there are factual differences and there are legal differences. Start with the legal differences and then tell us the factual differences, why they matter. Burschell, starting with the legal, on page 4A of the Petition Appendix, that's where Judge Batchelder reaffirms the Sixth Circuit decision in PILLA, which says if a defendant is facing overwhelming evidence of guilt, then it's not rational for them to do anything other than to take the best preemptive action. I thought she said only if the only hope for him is jury nullification. Well, she went on about jury nullification. But the test in PILLA that she followed, because it was Sixth Circuit precedent, was you only consider overwhelming evidence of guilt in that case. So what you want us to do is to add to what she said, and what you have to mean by that is it would have been no hope for you at trial. That's the reason. No hope for you at trial. What do you want to say? That's not the point that we're making. The point is you should never focus just on one piece of the circumstances, the likelihood of success at trial. You should consider all the circumstances, like you said in Strict Crime. Let's consider them all. And suppose one of them is there's no hope of success at trial, except jury nullification. Right. And there's two responses to that, which are kind of legal and factual. The first is that even a defendant who has virtually no hope at trial, we don't concede that's the case, may still choose to invoke their right to trial rather than take certain mandatory banishment from the United States for the benefit of only a 9- to 11-month reduction in their sentencing range. That is both reasonable and rational. The second is that there's a possibility that with informed counsel, he would be able to bargain for a plea that has lesser deportation consequences. And we know that, again, Justice Kennedy, going back to 124 to 127 of the Joint Appendix, the sentencing hearing colloquy, even the government thought that this plea was going to result in Mr. Lee going back to his restaurant business after his sentence was concluded. If the government was a good point, so imagine that your lawyer is below in this very case, went to the government and said, look, everybody was under a mistake here. Why don't you go to the district court with me? And we jointly will tell them, the judge, that not what would have happened if he had gotten good advice is the government would have figured something out to help him. The government would have charged him with a lesser crime. And my guess is you did that. And my guess is the government wouldn't do it. My understanding is that that hasn't happened, that the government took the position that because there was no likelihood of success at trial, game over. The Sixth Circuit got it right. We would love to have that opportunity. And the fact that we haven't had it is exactly why there's prejudice in this case. Kennedy, you're hearing it right now. Kennedy, but your rational defendant rule that you suggest sounds almost like a jury question. What were his – did he have lots of ties? Did he have lots of families to Korea? Did he have none? I just don't see how a trial judge can do that other than on a strictly case-by-case basis which is nonreviewable. It's just like a jury question. Justice Kennedy, the reasonable probability and rational basis tests are not our tests. They're your tests in Hill and Padilla. And lower courts have been applying them without any difficulty for many years. But as Justice Ginsburg pointed out, we have – in those contexts, we have a trial. And Padilla, I understand, is different. But it seems to me that you're – you have so many subjective factors that you endanger the system by having second thoughts, people who want the second bite of the apple. Like in any strickling case, when you consider all the circumstances, you have individualized facts, not subjective facts, but individualized facts that must then be looked at objectively. And let's think about Hill and what happened there. In Hill, you had an attorney who gave affirmative misadvice to his counsel about parole conditions. And that was enough for this Court to say there was ineffective assistance, but no prejudice there because he was unable to show a reasonable probability that had he known the proper parole conditions he would be facing, that he would have rejected the plea. But we have the exact opposite here. No one denies that if Mr. Lee understood the mandatory banishment that he was facing, of course he would have rejected the plea and taken his chances at trial, even if they were slow. Well, but I think several times in your brief and here today, you talk about – you say, well, who knows what will happen at trial. Well, that can't be the right test because otherwise there would never be prejudice in a strickland situation. I mean, who knows what will happen? Maybe the jury won't convict because they get it wrong. Maybe there will be a case of jury nullification. You say in your brief maybe the government witness will die. I mean, it's – yeah, of course you can't be certain about what's going to happen. But if your test is right, then all the strickland cases come out the other way. No, Mr. Chief Justice, I want to draw a bright line, again, between post-trial claims of ineffective assistance and plea stage ineffective assistance. Because after you've had a trial, you can already see what the government's theory is, what the defense theories were, whether motions to suppress were granted or denied, how the witnesses responded under the fire of cross-examination. You have all that data. And the defendant – Right, but you don't know what would have happened if the attorney had not been incompetent. You don't know what would have happened. If the attorney hadn't, you know, not called the witness or not presented this evidence, who knows what would have happened. But you have this large data set, and district courts are fully capable of saying, okay, what if this witness hadn't testified? Would that have changed the course of the proceeding? Yes or no. But at the plea stage, you don't know any of that. You don't know what's going to happen to the motion to suppress. You don't know what's going to happen on cross-examination. But I would have thought that the difference is more fundamental, which is that usually in Strickland, we are asking what was going to happen at trial. Yes. And we don't think, well, there was this 1 percent chance that the witness would drop dead. We put that to the side. Correct. But here the inquiry is different. The inquiry is not the outcome of the trial. The inquiry is the outcome of the plea proceeding. Exactly. And the plea proceeding might be very affected by somebody saying, you know, given my ties to this country, given my negative ties to any other country, given the fact that this is only a 9-month difference in prison term, I'm going to roll the dice for that 1 percent chance. Exactly. And that would be a completely reasonable thing to do, a thing that many people would do. Absolutely, because that's the kind of risk calculus that rational people engage in. But the key is that the outcome of the proceeding here is not the outcome of the trial, as it usually is in a Strickland case. The outcome of the proceeding here is the outcome of the plea negotiation. Exactly. Just like that quote that I read from Hill. It's about the outcome of the process at the plea process. All of that is true on the facts of this case. But to ask the same question, I don't want to beat a dead horse, but you can change the facts. So you have a defendant with more ties to Korea. He didn't come here as a young man. He came here when he was 25 years old. Yes. He still has some relatives and friends in Korea. The sentence that he faces here is much higher. Let's say it's 5 years or it's 8 years or it's 10 years. At what point, how do you decide whether it's rational? Well, that's the job of the district courts, applying all the circumstances. I hate to keep repeating that. How would you evaluate that as a district judge? Well, the first question I would do is I would ask the Hill test. Is there a reasonable probability that this defendant would not have pleaded guilty? And if I thought the answer to that question was no, then that's the end of the game. And that is the Hill test, right? We've said that. Right. And it's been in place for years. This is not your test. No. This is a test that's staring at me on page 59 of volume 474. That's right. Well, that's a purely subjective test. There's always a set of degrees. I mean, whether or not we talk about this rational person would have accepted. How much of a defense and how viable is the defense? With 1% defense versus 20% defense, 30% defense. At some point, the district court is going to draw a rationality line that they think is reasonable, correct? Correct. And it's a series of levers. Every one of those factors. If there's a defense that has a 1% chance, is that okay, versus one that has a 20% chance? Or how do you even measure how rational a potential defense may be? Well, you – But the inquiry is how much do we know he would or would not have taken this plea? We think that is the Hill test, correct. And I don't think anyone doubts, the government or even the district court judge doubts that had he known, he would have rejected it. All right. But the question that was put to you with reference to Strickland was in the context of what might happen at a trial with different evidence, with different arguments. We know how to do that. Judges know how to do that. You're asking us how to assess the mindset of the defendant when he or she makes the plea. That's very different. Well, I wouldn't say because it's an objective test, not the mindset of the defendant, but the mindset of a defendant in this particular defendant's circumstances. I understand. You call your test an objective test. Yes. You don't know. I understand that. But the question is whether or not it isn't so distinct from Strickland as to be unworkable. I don't think it's so distinct as to be unworkable. In fact, I think for the reasons Justice Sotomayor and Justice Kagan have articulated, it's actually much easier here. One more. Justice Kagan pointed out that the test that you are asking us to apply is the test that this Court says is applicable at the plea stage. Is there a reasonable probability, but for counsel's error, defendant would not have pleaded guilty, but would have insisted on his right to trial? Correct. That's exactly what we said the standard is, and I think you're just asking us to adhere to that standard. I'm asking you to re-adhere to that standard, but also to reaffirm the Strickland totality of the circumstances. All right. So is this the mistake you say that Judge Batchelder made, is she said, I will assume at least that your client would have said, I want to go to trial. Question, would that have been a rational decision? Some circuits say if there is overwhelming evidence of guilt, it's never a rational decision, and that's what we say. And you want us to say that's where she was wrong. Correct. And so send it back with the knowledge that sometimes it could be rational for a person to want to go to trial, even not hoping necessarily for jury nullification. But sometimes it could be, and my client's the guy. And so judges go back to the district court, do it over again, knowing that overwhelming evidence is not always the end of the case. Is that right? That's perfect with one caveat. I would not send it back. I think given on these facts here that you could do it. But we can't do that. I mean, I don't see how any of the others could do that. For myself, I don't see how we don't send it back. I'm not a trial judge. I don't really know how trial defendants react, and a trial judge does know that much better than I do. I think given these extreme facts, you could conclude there's a reasonable possibility that you would have rejected it. I think the district court said here that this defendant would have gone to trial. Absolutely. And what they said was the absolute rule of this circuit is what led this district court judge to say, I believe this person would have gone to trial, but this rule doesn't permit me to rule in his favor. That's exactly right, Justice Alito. What happens if there's overwhelming evidence that this defendant, that the defendant in the case would have gone to trial if the defendant knew about the deportation consequences? Overwhelming subjective evidence, statements before the plea was entered, but also virtually no chance of acquittal had the defendant gone to trial. What happens then? I think the defendant still gets to assert his constitutional right to trial and can't be deprived of that by ineffective lawyering. Is there a possibility? If there are no further questions, I'll... But this is possession with intent to distribute. Suppose the defendant asks the judge, please charge the lesser offense of possession. Yes. And the defense, the offense of possession does not carry adverse deportation consequences. So is that determination whether to charge the lesser, give the jury the choice between with intent to distribute and plain possession, is that in the discretion of the judge? Well, the charges to bring are in the discretion of the prosecutor, and that goes not only to what charges are given to the jury, but also what pleas are possible. And here... So if the prosecutor doesn't want to do possession, the trial court can't do it? The trial can't force it, but all the guides at the Federal and State level encourage the government to consider deportation consequences, and here the government thought there would be no deportation consequences. I'll reserve the balance of my time. Thank you, counsel. Mr. Feigin. Thank you, Mr. Chief Justice, and may it please the Court. The crux of a Padilla claim is a defendant's contention that if he had constitutionally competent counsel, that counsel could have given him a legitimate chance at avoiding a removal with particular – avoiding a conviction with particular removal consequences. A defendant can't prevail on that kind of claim if there's nothing constitutionally competent counsel could have done to create that chance. And that's the case here, where the lower courts found, in the words of the court of appeals, that Petitioner had no bona fide defense, not even a weak one, and stood to gain nothing from going to trial aside from a longer prison sentence, except for the off chance of jury nullification or the like. You'll agree that there are many possibilities where it would nonetheless be rational for him to choose – where it would make sense for him to want a longer prison sentence, right? Let's say that he has a serious medical condition. The medical care he's going to get at Millington is better than he's going to get wherever he's going. He may get no medical care where he's being removed to. Isn't that rational for him to want to go to trial with the expectation that he'll get a longer prison sentence? Well, two points on that, Your Honor. First, when I think the Court is using the term rational here, and where it uses it in Padilla as a supplement to the would the defendant go to trial test and says that the defendant has to convince the Court that it would be rational under the circumstances to reject the plea, the Court is using the term rational in its traditional legal sense. When we talk about a rational jury and the result a rational jury would reach, we're thinking of a jury that applies the law to the facts and doesn't think about results like jury nullification or happenstance. As to your particular question about whether it would be rational, I think in a more common sense way to want that, that might well be true, Mr. Chief Justice, but that's not the kind of thing that we consider to be prejudiced for Sixth Amendment purposes under Strickland. Under Strickland, in the typical Strickland case where you're talking about the outcome of a trial, I understand that. But we're talking about something different here. We're talking about the reasonable probability that he would or would not have accepted the plea agreement. Well, Your Honor, I'm not aware of this Court ever accepting a claim that the Defendant's counsel was deficient because he didn't get more prison time. And I don't think that's the kind of thing that would be true. Well, but, I mean, you know, that's funny, but the fact is this is a situation where he might well have elected to have more prison time because it would keep him in Tennessee close to his family, where he would be able to visit his children, where he could even, as I think the judge suggested, have some role in continuing to run the restaurant. What is life like at FPC Millington? I take it it's not Alcatraz, right? I'm not sure what level of security is at that facility. It is sorry, I don't think I could accurately answer your question, Mr. Chief Justice. Well, what is life like at a minimum security Federal prison? I mean, the judge here recommended a particular facility close to Tennessee. I assume he didn't seem to want to sort of throw the book at the Defendant. Well, Your Honor, I think there's visitation, right? I think the premise that someone is entitled to counsel who will keep him incarcerated in the United States is not only contrary to anything the Court's recognized under Strickland, but also contrary to our criminal immigration laws where incarceration in the United States is the penalty for reentry. I also would want to make clear that there's nothing in the record to suggest that this particular petitioner, had he known that removal was inevitable for a conviction, would nevertheless have opted for a conviction that would give him a longer prison sentence. What we're discussing is the red line. Well, what about murder? Suppose he thinks he's going to be murdered if he's sent abroad. Same problem. I mean, the problem is that he, which if you read Judge Batchelder's opinion, I mean, it could be read, as he says, that if the evidence is overwhelming, that's the end of the matter, and it wouldn't have been rational to ask for a trial. And now all we've done is think of situations where it might be. I mean, he thinks he's going to be sent back to some country in the world, and it's going to end up he's dead as his family. He'd rather be in jail. Now, are we not supposed to take that into account? Why not? Well, Your Honor, there's a real disconnect between the claim the petitioner is bringing and the relief that he's seeking. The reason that he's subject to removal is not because of any misadvice counsel made. It's because a rational, any rational jury, the lower courts found, applying the law to the facts, would have convicted him of fueling drugs. You see, that's confusing two things, and this goes back to the point that the Chief Attorney has a probability that the jury wouldn't have convicted him, but that's not the question, and we made this clear in Hill and in other cases. The question is, what's the probability that the relevant proceeding would have been different, and here the relevant proceeding is the plea negotiation and the plea agreement, and that's the thing that we're looking at, is did this deficient performance lead to a different decision by this, by Mr. Lee to go to trial or not, to plea or not? And that's all we're supposed to be looking at here, according to Hill. Now, that has its difficulties, as Justice Alito said. What exactly do we look to? How do we draw lines? There's no question that this is, in some cases, an uncomfortable inquiry, but that's the inquiry we're supposed to be making, isn't it? And you keep flipping it to a different inquiry, which is the inquiry in a trial context, but not in a plea context. That's because, Justice Kagan, I don't actually think that's purely the inquiry we're supposed to be making here. I don't think Hill or any other case in this Court's Strickland line values the right to go to trial purely in the absence of plea. I'm sorry. I'm sorry. This is what Hill says, Mr. Fagan. It just says, here's the standard. The defendant must show that there's a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. That's what we're trying to determine, whether he would have insisted on going to trial. Well, let me say a few things about that. First, right after that, Hill looks at the right to go to trial through the lens of an attorney and whether the reasonable attorney who's just looking at the outcome of the trial would advise the defendant to go to trial. So to the contrary, when Hill keeps on going, it says, you know, this defendant didn't care about his parole eligibility, so we shouldn't look at the fact that the parole eligibility was a bad deal for him because he didn't care. So the emphasis clearly in Hill is, is what are the things that would have made a difference to end the plea negotiation? Well, Your Honor, the particular defendant in Hill didn't even get to the objective part of the inquiry we're discussing today, because he failed at the outset. There wasn't even an allegation that he subjectively would have selected a trial. But I'd also point the Court to Padilla, where it lays out the test from Hill and says, moreover, a defendant in these circumstances needs to convince the Court that it would be rational under the circumstances to reject the plea. And finally, another good place to look would be- Well, because what Padilla is saying, isn't it, Mr. Fagan? Is essentially, look, this is not going to be a case where somebody can just get up and say, this is what I would have done, and the Court has to accept it. No, Padilla says, the Court doesn't have to accept every claim that a defendant makes. A court can test those claims against a notion of rationality, against a notion of what reasonable people would do. But still, the essence of the inquiry is what would have happened at the plea negotiation, not what would have happened at the trial. Well, with respect, Justice Kagan, I think, as the discussion when my friend was up here demonstrated, I don't think a court can reasonably do that. As the Chief Justice pointed out, there might be somebody who hasn't been in the United States very long and doesn't have the ties that this defendant has, who says, well, all my life, I've been waiting to come to the United States, and so it's perfectly rational for me to roll the dice. The last place I would look, point you to, for the fact that trials are treated as instrumental under Strickland, not as ends in and of themselves, is the Court's most recent Strickland decisions in Cooper and Fry, which look to the outcome of what would have happened in the combined trial plea process, and in fact find that a defendant's election to go to trial was prejudicial, where there was a plea offer on the table before he went to trial that would have given him a better overall outcome. I think this makes a great deal of sense, because if you're granting relief to defendants in circumstances where a rational jury would have convicted them had they gone to trial, you're giving them windfall relief that they couldn't reasonably have expected at the time. Sotomayor, you're entitled to a constitutional trial. But putting that aside, you're not entitled to a plea. You're not entitled to a lesser sentence. You're entitled to go to jail if you want to. Isn't that what we said in Dominguez Benitez, in a Rule 11 Strickland evaluation? We said that a court should, quote, not second guess a defendant's actual decision. If it is reasonably probable he would have gone to trial absent the error, it is no matter that the choice may have been foolish. Now, that's Strickland under Rule 11. And it's the same inquiry. Would he have pled guilty if he had known this information? And we explicitly said, your decision can be foolish. Well, Your Honor, while Dominguez Benitez draws some analogies to Strickland, it's a slightly different test. It's not an analogy. It talks about Strickland in the Rule 11 context. I think the Court made clear in Gonzales-Lopez that the Sixth Amendment right to effective assistance of counsel actually includes the prejudice itself, which isn't true of the Rule 11 right that was issued in Dominguez-Benitez. Attorney errors come in all sorts of shapes and sizes, and the kind of error that amounts to ineffective assistance of counsel is one that prejudiced the defense. So you have to ---- Sotomayor, here we have a defense attorney who says, I didn't know the law. I told him he wouldn't be deported. And if I had known the law, I would have told him to go to trial. So this is both prejudice in the advice and prejudice in the decision to go move forward. Well, I think you have to also look whether there was prejudice in the outcome. And I actually think this is clear, if you'll bear with me for a second, if you think about an example that comes straight from Hill. So let's take a defendant where there is overwhelming evidence that he committed, say, a bank robbery, forensic evidence, video evidence, what have you. And that defendant's complaint is that his attorney didn't adequately investigate. And the attorney did nothing to investigate. He just said, why don't you plead guilty? And it turns out, had the attorney investigated, he would have come up with 20 character witnesses, all of whom would have testified, this is a great guy, and he just needed money because one of his children was sick. And let's say the defendant, because he has a sick child, would have done anything to avoid prison time. Under the analysis that goes from page 59 to page 60 in Hill, that defendant, even if we subjectively believed him that he would have selected trial, is not entitled to Strickland relief if his only chance of prevailing at trial was jury nullification or some off chance of some external circumstance handicapping the government's case. So step back a second. And I agree with you, I can't find total clarity in these decisions. And it seemed to me that if we're making the separation as they make, between what you look to to show prejudice in a plea agreement and at a trial, both Strickland errors, it must be that the constitutional consideration of not really wanting a person to feel he has to give up his right to a jury trial, that influences the standard. And if it doesn't influence the standard, I have a harder time deciding the cases. So really, I think what we're deciding here is to what extent it influences the standard. And you see how I'm thinking that, because there's a kind of just look to the plea, just look to the plea, don't give a damn about what happens at trial. Well, we can't get that extreme. So we say, well, we'll look just at the plea, but if it's just overwhelming, then we're going to say we're looking to the trial, too. Okay. If I'm right as to what these cases mean, then we are in a world where 95 percent of the people and what happens to them depend upon pleas, not upon trials. And doesn't that argue for look to that plea part of the thing. Don't worry so much about whether he'd been convicted at trial. In other words, we're talking about very small degrees here, but that factor seems to me to push in the direction of if you really think he would have gone to trial, that should be the end of it, even if he's pretty irrational. Your Honor, I don't think that's a good reason for unwinding reliable admissions of guilt when we have a kind of outlier case like this one where the lower courts were certain that he would have been convicted at trial unless jury nullification or some other happenstance occurred. What is the answer to the lesser included offense? Is that out of the picture? That is also out of the picture, Your Honor. So if I could just briefly recount the evidence here. On a search of his residence, they found 88 ecstasy pills, over $32,000 in cash, and a loaded rifle. Immediately after the search, he admitted to the police, after being given Miranda warnings, that he— Yeah, I know what the facts are, but isn't it sometimes a prosecutor might say, I have a solid case. The evidence is overwhelming, but this is a nice young man, and the jury might be sympathetic. So rather than risk nullification, if you call it that, I want to give the jury an opportunity to convict him on the lesser. So at least there will be a conviction. Well, Your Honor, there might be cases where a prosecutor might say that, but the question here is whether Petitioner has a constitutional entitlement through the lens of ineffective assistance of counsel to try to seek that kind of result. And here there is absolutely no evidence that the trial prosecutor was inclined to have no right. Wait a minute. He has a constitutional right to effective counsel. And I think that— And if he has that right, aren't we depriving him of that right and the right to a trial, both of them guaranteed by the Constitution? As I keep saying, a plea is not, to have his attorney try everything that is legally permissible to try. None of these attempts, and your adversary went on for pages of a variety of different ways, for him to have achieved a non-deportation plea as a possibility. Doesn't he have a right to have someone try that for him? No, Your Honor, not where there is no evidence that there is any – there was any possibility of a better plea. The government doesn't have any general practice or policy of putting deals at— You don't mean that, Mr. Fagan. I think – you don't mean that. I think what you just said was that there is no constitutional right to go to trial when there is no evidence. Your Honor, I was answering the question about the plea. I'm – if I could answer the question about the trial. There's a constitutional right to go to trial, isn't there? There is, Your Honor, but— Even if there's – even if there's very weak evidence on your side. There is, Your Honor, but I think we protect that ex ante much more than ex post, and let me explain why. Well, let me just finish the question. I mean, you would agree that there's a constitutional right to go to trial, regardless of what the— I think I'd have to, Justice Kagan, yes. Regardless of what the state of the evidence was, right? That's absolutely correct. Which is the question that Justice Sotomayor asked you. And she said, and why isn't this correct? So then the question is, has there been deficient performance, and a person's entitlement to go to trial, an entitlement to stare at all the various probabilities and to make an informed choice, that entitlement has been taken away by this supremely deficient performance. And that should be the question. So, Your Honor, I think there are several reasons why we would – we value the right to go to trial ex ante and not necessarily in the Strickland context, whereas I've suggested I think it's much more outcome focused. The first is that the touchstone of Strickland is fundamental fairness. And we don't – I think both Strickland and Hill exclude the possibility of jury nullification or happenstance, precisely because we don't think anything unfair has happened to a defendant because he's been denied the possibility of fairness. Strickland is a very different case in that – in that way. Because what Strickland says is, once you're at a trial, your right is to a fair and accurate trial. And nullification has nothing to do with a fair and accurate trial. But this is before. This is when you're trying to decide whether to exercise that right to go to trial. And there, what you're entitled to is that a lawyer be able to give you, in a non-deficient way, the various circumstances, the various things that you would consider, to enable you to make that constitutional – constitutionally protected decision in a reasonable way. Well, Your Honor, we protect the right to go to trial ex ante very closely and allow a defendant to select that result, even when it's foolish. But the difference, when you're looking at it ex post, is that you're asking a judge to both evaluate and endorse the idea that someone would seek these extra-legal results, like jury nullification, or simply hoping that overwhelming evidence of guilt falls apart, as a reason for unwinding a reliable admission of guilt. All you're asking a judge to do is to say that in certain circumstances, it is not beyond the bounds of reasonableness to throw the dice in order to get an outcome, in order to get – in order not to be deported from a country where you've lived your whole life. Well, Your Honor, I don't think the bounds of reasonableness rationality test is a particularly workable standard. And I think in cases like this, it's just going to leave the – Mr. Feigin, you know, we're talking about cases like this. The circuits are split. The vast majority of them do the reasonable probability tests and don't seem to have the problems you're talking about. Do you know how many of these motions there are? I don't, Your Honor, but I also – There's not a – I mean, there's not a whole lot of them. Your Honor, I – There's a handful of them. The vast majority, the motion for relief are denied by the lower courts, not on the Sixth Circuit rule, but on the totality of the circumstances. It doesn't appear as if we're overwhelmed with these. Well, Your Honor, I can't give you a precise number, but if you search for cases in the Federal and State courts in which, you know, Padilla has cited more than five times, you get about 1,500 results. And I think that shows these claims are being brought fairly frequently. And under Petitioner's rule, I don't think it's a – How many of them are being granted? Your Honor, I couldn't give you an answer to that. But I think under Petitioner's rule, many more of them will be granted. Because it means any time – I'm sorry, Justice Alito. No, finish your sentence. I'm sorry. It means that any time a defendant can subjectively state that he would have gone to trial and the trial judge finds it credible, which I think you could under pretty much any set of circumstances, as the Chief Justice pointed out. I'm sorry. The sentence is getting a little run on, Justice Alito. No, that's fine. Then the – then that defendant will be entitled to relief and will have a new trial, even though that defendant, when he actually faced the choice as to whether he should enter the plea and was balancing that against a trial, didn't have any legitimate chance of prevailing at a trial. His only chances were during nullification. I understand the argument that the test should be purely subjective. What would this defendant have done? There's language in Hill that supports that. The language that says, is it rational under the circumstances, is contrary to that, as I read it, because rationality is not a matter of – is not a subjective thing. It's objective. But let's say it is a purely subjective question. Then I think it's a question of historical fact. So you have to have a finding of fact by somebody, presumably the judge, in the 2255. And that would be reviewed for clear error. Would that – wouldn't it follow? Well, Your Honor, I think you – are you proposing a test where you just find a fact? No, I'm not proposing that test. But I'm suggesting that that is the consequence of our saying that the test is purely subjective. We can't decide that this defendant would have, as a matter of fact, gone to trial had he been properly advised. That's a – that's a factual question, purely historic fact. It would have to go back to a judge to make a finding of fact on that question. You mean in this case? In this case or in any case. I think you could ask judges to make those sorts of factual findings. But I think one problem that Justice Kennedy brought up earlier is there's a problem there of hindsight bias, and in some cases, I'm not suggesting that that's true. In this case, a defendant telling things that aren't true in order to obtain collateral relief, and having an objective backstop where we make sure that we don't give defendants a chance in post-conviction review that they didn't ever originally have. Mr. Feigin, routinely, papers come in from a Petitioner who says, my lawyer didn't do X. Most commonly, the lawyer comes in and says, I did do X. And most commonly, the district court says, the lawyer told me I did X, and at the plea colloquy, I asked that question, and the defendant said, yes, I understood that consequence. And the court doesn't have a hearing. A ruling in our case wouldn't change those cases. It wouldn't change the cases where the defendant comes in and says, I would have pled guilty, but the lawyer comes in and says, he insisted he was innocent. I kept telling him the evidence was overwhelming, that he should take the plea, but he kept telling me, I'm innocent. It doesn't require a hearing for a judge to say, that defendant would not have pled guilty because he was claiming his innocence. Those cases wouldn't change either. Those are a good majority of the cases that come before district and circuit courts. Feigin. So, Your Honor, what we're talking about here is a set of cases where, as the lower courts found here, the only chance the defendant had at trial was jury nullification or, frankly, some stroke of luck that would collapse the government's case somehow. And in that set of cases, it does not make sense to grant a defendant windfall relief that gives him an opportunity he could never have reasonably expected at the outset. I think if the rationality of the courts were to say, well, I'm not sure, I still don't go back to my earlier point, which is the difference between 9 years and 5 and 10 years is very big. For 9 months and sure banishment, what's so irrational about going to trial? Well, Your Honor, as I suggested earlier in my colloquy with the Chief Justice, I think rationality here has its traditional legal meaning, meaning looking at it through an objectively reasonable lens, a lens of objective reasonableness. And I think that makes great sense here because if that were not the case, then I think Padilla's promise that the ruling would not really be opening Pandora's box, but would instead be chavined by the requirement to show proof. But what do we do with all those defendants who reject pleas with full knowledge and say a rational person must have wanted, should have taken this case? And so you should vacate because I didn't take my plea. Don't look at all the facts and circumstances. Don't look at any of the arguments because it's only a rationality test. Your Honor, we're not saying there is only a rationality test here. First of all, there is a threshold inquiry, and this is where the defendant in Hill failed. There's a threshold inquiry that this defendant has to say, I would have done something differently if my lawyer had given me better advice, constitutionally competent advice. And then, if that is what the – then if we believe that the defendant is credible in saying that, we then go on to the objective portion of the inquiry and we see Mr. Fagan, again, just in your words, objective reasonableness, why can't a judge find, as to a defendant, that it is objectively reasonable to give up six or eight or nine months for a shot at staying in this country rather than being deported to a place that you don't know and where you have no ties? I mean, you know, if somebody gave me that choice, sign me up. So I think of myself as an objectively reasonable human being. Well, Your Honor, I think what objective reasonableness means here, again, I'd come back to the way the Court uses the term rational that's used in Padilla and the way it uses it to describe, for example, a rational jury, is the application of the law to the facts and what outcome we would have reached there. And that makes sure – It's an objectively reasonable assessment. It's an – it would be an objectively reasonable choice to exercise my right to a jury trial in that context. And that's the question. Whether it's objectively reasonable to make a decision different from the decision that I would have made in this proceeding, which is the plea negotiation. So, Your Honor, if you look at the inquiry that way, I don't think it's acting as any sort of meaningful check at all because you could always make the argument that, yeah, I would have risked two more years. Yes, I would have risked five more years. And I don't know how a court can come in and say, you know what, that's not objectively reasonable. Well, a court can do it in the way that the Court has done it since 1985 when we said that this was the inquiry under Hill. This is what courts have been doing since – for the last 30 years. Well, Your Honor, I think the circuit conflict that we have here shows that that's not what all courts have been doing. It's what many courts have been doing for three decades. I'm not saying that a court can't try to do that. I'm saying that we – it's very difficult to achieve reliable results. So Petitioner has an example on page 6 of his reply brief of circumstances where a defendant doesn't have very many ties to the United States and just got here. And Petitioner asserts, well, in that case, he couldn't possibly have shown that he would have selected a trial. But I don't think that's true. A defendant could get up on the stand and say, all my life, as the Chief Justice suggested earlier, I've wanted to come to the United States and I would have risked anything to stay here. Kennedy. This is a little bit different question, but assume the Petitioner prevails and that there can be no trial because the evidence is stale or something. Can the INS still proceed to deport this person? Does it need a conviction, given his admission at the earlier plea? Right now, there is a final order of removal, but that final order of removal is based on his conviction for an aggravated felony. My question is, can you do it without the conviction? Without the conviction for an aggravated felony, there would be no basis for the removal. He would be a lawful defendant. There has to be a conviction. To make sure I'm giving you a complete answer, Justice Kennedy, he would need to seek some sort of immigration relief from the immigration courts in order to not be removed from the United States. Well, he would get that, right, if the basis for the removal order was a conviction that's been overturned? He should be able to seek reopening. If for some reason the case is not reopened, he could seek judicial review of the case on reopening. So he has various avenues in which to do that. Could the government still make the case that even though the conviction has been set aside, it has adequate proof, and it wants to present proof of the violation in the deportation hearings? I don't believe it would do that just because it has evidence that wouldn't be sufficient to convict. I don't think that's necessarily going to make him removable here.  Do prosecutors ever advise the court in open court that this is a deportable offense? I don't know whether they do that. Under the new version of Federal Rule 11, the court is required to ask. I know the court asked. The court is required to ask and to advise. Does the prosecution ever comment in response to that question? It's a colloquy between the defendant and does the counsel ever, prosecutor ever interrupt or intervene? I think it's unlikely that the prosecutor would interrupt a colloquy between the court and the defendant in a Rule 11 context. I think prosecutors, of course, have their ethical duties, and if they see some mistake is being made, I'm sure they would speak up. And the court is always entitled to ask the prosecutor if they have a view. Thank you. Thank you, counsel. Two minutes, Mr. Bursch. Thank you, Mr. Chief Justice. Three quick things. First, I don't want to lose the point that Justice Sotomayor raised, that this isn't just keep this plea or go to trial. There's also the opportunity to negotiate other plea alternatives, and we give a couple of those in our reply brief, including one where there was a defendant with two and a half kilograms of meth who was able to get a plea conviction with lessened deportation consequences. And my friend says there's no evidence that could happen here. Well, that's because the government, based on the Sixth Circuit categorical rule, has refused to negotiate throughout the process. If you look at what happened at that plea colloquy again, even the government believed that Mr. Lee was going to remain in the country, and the fact that he was willing to serve seven years here instead of just his one voluntarily, rather than be deported, is strong evidence that there could have been some other arrangement, a meeting in the middle. Second thing about Cooper and Frye, my friend mentions that in that case you did look at what would likely happen at trial. Well, we don't disagree with that approach. Under our approach, just like in Strickland, you look at all the circumstances. And the Sixth Circuit's mistake here, Justice Breyer, is that they focus just on one circumstance, not the rest. Breyer, in what they say, he says at the end there that it's alongside. I mean, she says alongside. We adjoin, second, to the United States that the claimant's ties to the United States should be taken into account in evaluating alongside the legal merits. She says that because that was the test. But then what she says on page 4a of the appendix in PIA, again, the prior Sixth Circuit precedent they're bound by, we held that no rational defendant charged with a deportable offense and facing overwhelming evidence of guilt would proceed to trial rather than take a plea deal. That's the problem. So the final thing, I think Justice Kagan nails this on the head when she says the test has to be did deficient performance lead to a different decision. That was the standard you articulated in Hill. It's been on the books for 32 years. Justice Alito, I understand completely how district courts might struggle with that in tough cases, but they've been doing that successfully. And to the extent that there's any doubt about whether that should be the test, Justice Breyer, you're exactly right. It's that consideration of the right to jury trial that's being given up, the gold standard in our judicial process. So we ask that you reverse the Sixth Circuit and hold that Mr. Lee can withdraw his plea. Thank you. Roberts.